■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRIS MCALPIN, Appellant. [891 NYS2d 18]—

On the day of defendant's plea to robbery in the second degree, based on an allocution that he and his friends had repeatedly punched the complainant and stolen his portable PlayStation, the terms of the plea as stated on the record were that defendant would receive a "deferred sentence" with a possibility of probation and youthful offender treatment, *if* defendant enrolled in and successfully completed a Fortune Society program. However, if he failed to do so, or if he got arrested for another crime in the interim, he was told, he would be sentenced to a minimum of three years and a maximum of 15 years.

Seven months later defendant was in court for sentencing, having been rearrested twice and having failed to successfully complete the Fortune Society program. The sentencing court remarked that the People had previously requested a term of $3^{1}/_{2}$ years if imprisonment was required, and the People continued to recommend that term. When defense counsel protested about the "raise" in the term being imposed, the court said, "It's not a raise. Just to remind you, the plea agreement he pled guilty to on January 2, 2007, he pled to robbery in the second degree which is a Class C Violent Felony offense. I advised him that I would place him on this Interim Probation Sentence; and if he was successful, he would get YO and probation. However, the minimum sentence being 3-1/2 years, I told him that if he was not successful he will have to go to prison for 3-1/2 years and, of course, 5 years of Post-Release Supervision." Defense counsel said, "Yes; I remember that, Judge."

Notwithstanding the court's assertion at sentencing that defendant was informed at the time of the plea that his sentence would include the postrelease supervision component, and defense counsel's agreement, in the absence of any mention in the plea minutes of postrelease supervision, we are unable to conclude that defendant was timely informed of it.

When a defendant pleads guilty with the understanding of the term of imprisonment to be imposed, but is not informed until sentencing of the postrelease supervision component of his sentence, the plea must be vacated as not knowing and volun-

tary (*People v Louree*, 8 NY3d 541, 545 [2007]). Belated knowledge of postrelease supervision learned of at the time of sentencing does not constitute grounds to require a motion to vacate the plea in order to preserve the issue for appeal (*id.* at 545-546).

We reject the dissent's assertion that defendant did not have to be informed of the postrelease supervision component of the potential sentence, on the reasoning that postrelease supervision was not in this instance a "direct consequence" of the plea as contemplated by *People v Catu* (4 NY3d 242 [2005]), since it would only become necessary in the event that defendant failed to satisfy the conditions of his "deferred sentence." At the time of the plea, in order to ensure that defendant was knowingly and voluntarily waiving his right to trial, the court appropriately informed defendant that the proposed terms of the plea included a potential determinate term of anywhere from three years to 15 years if he failed to satisfy the conditions of his interim probation. By the same token, the court should have simultaneously made defendant aware of the postrelease supervision component of that potential sentence. In our view, the potential term of imprisonment, including postrelease supervision, may have been contingent on defendant's behavior, but it nevertheless does not fall into the category of "collateral consequences" about which the defendant need not be informed in order to ensure a valid waiver. Concur—Saxe, J.P., DeGrasse and Freedman, JJ.

Buckley and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: The majority implicitly concludes that defendant's claim under *People v Catu* (4 NY3d 242 [2005]) is preserved for review and has not been waived. As defendant is entitled to no relief in any event, I need not decide whether I agree with that conclusion.

Although the plea minutes make clear that defendant was not advised on the record of a postrelease supervision component to the sentence in the event he did not successfully complete the interim probation sentence, the critical question is whether defendant was so advised prior to the plea colloquy during proceedings that were not transcribed. The record provides a substantial, albeit not a conclusive, basis for concluding that defendant was so advised. At sentencing, the court stated that at the time of his plea defendant was advised that if he was not successful on the interim probation sentence, he would "have to go to prison for 3½ years and, of course, 5 years of Post-Release Supervision." Defendant's attorney agreed with the court, expressly stating, "Yes; I remember that, Judge." If Justice

White and defense counsel were correct, vacating defendant's guilty plea confers a windfall on defendant and needlessly deprives the People of a fairly obtained conviction for a serious crime. The majority writes that "in the absence of any mention in the plea minutes of postrelease supervision, we are unable to conclude that defendant was timely informed of it." I respectfully submit that the majority also should be unable to conclude that the court and defense counsel were wrong, i.e., that defendant was not timely informed of postrelease supervision.

Accordingly, I would hold that defendant has failed to meet his burden of presenting this Court with a factual record sufficient to permit review of his claim that he was not timely informed about postrelease supervision (*see People v Kinchen*, 60 NY2d 772, 773-774 [1983]). For the majority to simply accept defendant's appellate claim that his counsel and the court were wrong is particularly inappropriate given the absence of any sworn assertion from defendant that he was not informed about postrelease supervision at the time of the plea.

Defendant's claim under *People v Catu* should be rejected for an independent reason: on the particular facts of this case, the court was not required to advise defendant about postrelease supervision. Although a trial court must advise a defendant of the direct consequences of a guilty plea, the court "has no obligation to explain to defendants who plead guilty the possibility that collateral consequences may attach to their criminal convictions" (4 NY3d at 244). Collateral consequences "are peculiar to the individual and generally result from the actions taken by agencies the court does not control"; a direct consequence "is one which has a definite, immediate and largely automatic effect on defendant's punishment" (*id*. [internal quotation marks omitted]). Under the plea agreement, neither a term of imprisonment nor a period of postrelease supervision was a definite, immediate or automatic consequence of the plea. Rather, defendant was to be placed on interim probation supervision for up to one year and, if he successfully abided by the conditions of that supervision, including completing a Fortune Society program and not getting rearrested, he would be permitted to receive youthful offender treatment and a probationary sentence. The imposition of a sentence that included a period of postrelease supervision was no more than an indefinite possibility, one that was contingent on defendant's own actions. In my view, accordingly, the direct consequences of defendant's plea did not include a period of postrelease supervision.

In this regard, *Torrey v Estelle* (842 F2d 234, 236 [9th Cir

1998]) is instructive. After serving two years in the custody of the California Youth Authority following his plea of guilty to first-degree murder, Torrey was returned to court for imposition of a state prison sentence on the ground that he was not amenable to Youth Authority treatment, and was sentenced to 25 years to life. Rejecting Torrey's claim that his plea was involuntary because he was not advised of the possibility he thus could be returned to court and committed to state prison, the Ninth Circuit held that "the possibility that [Torrey] could be returned to the court for commitment to state prison was not an automatic consequence of his plea" (*id.* at 236). The court reasoned that "exclusion from the Youth Authority is contingent on many factors, including the future conduct of the defendant himself, and cannot be held to be a direct consequence of his plea" (*id.* [footnote omitted]). Finally, what the court concluded about Torrey's "failure to succeed under the original terms of his sentence" is equally applicable to defendant's failure to succeed on interim probation supervision: it "was simply an indefinite possibility on which the trial judge had no duty to speculate" (*id.*).